JONATHAN LADD *vs.* LYDIA CLEMENTS & another.

The members of an incorporated religious society having accepted their act of incorporation, and organized under the same by the choice of a president and other officers, but never having chosen any assessors or parish committee, or adopted any by-laws directing the manner of calling meetings, five of the qualified voters of such society signed an application to a justice of the peace, requesting him to call a meeting thereof, at a specified time and place, to fill all vacancies in the offices of the society, to do all acts and things necessary to effect a full and complete organization, and to see if the society would confirm their former proceedings and amend their records, so far as might be necessary to render the same valid and effectual in law: It was held, that the society were within the provisions of the Rev. Sts. *c.* 20, § 17, authorizing the calling of a meeting by a justice of the peace, on the application of five or more of the qualified voters; and that the meeting called by the justice on such application was properly called and was a legal meeting, although it was not stated in the application, or recited in the warrant, that there were no assessors or parish committee.

Where three out of six signers of an application to a justice of the peace to call a meeting of a religious society according to the provisions of the Rev. Sts. *c.* 20, § 17, were admitted to be qualified voters; a fourth, to whom it appeared by the stock book that one fourth of a share had been issued, had been clerk of the society, and one of a committee to purchase land; a fifth had become a stockholder by an original subscription in the name of the firm in which he was a partner, and by eventually succeeding to the rights of his copartners; and the sixth was a signer in the stock book, and had paid for a share, though no certificate of it could be found, and had acted as a member at former meetings; and all the signers of the application, except one of the first three, were present and acted as members at the meeting called by the justice upon this application, at which meeting ten or more other members of the society were also present: It was held, that a jury would be authorized to find from these facts that the application for such meeting was legal.

THIS was a writ of entry, to recover an undivided forty-first part of a lot of land in Lowell, with a block of buildings thereon, and was submitted to the court upon a statement of facts, agreed upon, after a trial in this court, as a substitute for a report of the judge, before whom the case was tried.

The demandant claimed title to the premises, under the levy of an execution thereon in his favor against the proprietors

of the First Freewill Baptist Meeting-house in Lowell, on the 19th of March, 1845; the same having been previously attached on the 16th of November, 1842. The regularity of these proceedings was not called in question.

The tenants claimed to hold under conveyances from the said proprietors, made before the plaintiff's attachment.

On the 30th of March, 1836, an act of the legislature was passed, by which Nathaniel Thurston, Samuel Folsom, and Abram S. Holbrook, and their associates, were made a corporation, by the name above mentioned, with the rights and privileges and subject to the duties and liabilities incident to religious societies, and with power to hold real and personal estate, the annual income of which, exclusive of such meeting-house as they might erect, should not exceed $1000, to be appropriated exclusively to parochial purposes.

It appeared by the records of the said proprietors, that a meeting of the corporation was called by Thurston, by means of a notice dated the 9th of August, 1836, (but in what manner the same was served did not appear) informing the persons named in the act, that a meeting of the corporation would be held at a specified hour and place on the 17th of August, 1836, to see whether the proprietors would accept the act of incorporation; to choose all necessary officers; and to determine upon the mode of transacting all other business that might lawfully come before them; and that, at the said meeting, which was held accordingly, the act was accepted, by vote, and a president, treasurer, and seven directors chosen.

It being objected, that the conveyances relied on by the tenants were invalid and without any legal effect, for want of authority, on the part of any person by whom they were executed, to bind the corporation thereby, the tenants introduced evidence, under and subject to objections, on the part of the demandants, that in October, 1836, sundry persons had subscribed an obligation promising severally to take shares in the meeting-house which the proprietors were about to erect; that the proprietors, on the 22d of August, 1836, passed a vote authorizing a committee of three to select and purchase a lot of land for a meeting-house, — to take a

conveyance thereof in behalf of the proprietors, — to obtain a plan and make an estimate for the building of the house, — and to divide the same into shares of $100 each ; and that of said shares, and fractional parts of shares, the number of (blank) in all had been taken up and paid for ; but it did not appear, that the proprietors had any formal or written by-laws of any kind, or any other written contract of member-ship, or that they ever elected any assessors or committee authorized to call meetings.

It was also in evidence, that in August, 1840, the said proprietors having built the meeting-house and block alluded to, and having borrowed or become the depositaries of divers large sums of money, applied to the Lowell Insti-tution for Savings for a loan, and were then advised by the solicitor of that institution to organize anew, and in a more formal manner. An application was accordingly made to the said solicitor, being also a justice of the peace, in writing, signed by six persons describing themselves as proprietors of the First Freewill Baptist Meeting-house in Lowell, request-ing him to issue his warrant calling a meeting of the pro-prietors, at a specified time and place : 1st. To fill all vacan-cies that might have occurred among the officers of the corporation, and, in general, to do all acts and things neces-sary to effect a full and complete organization ; 2d. To see if the proprietors would confirm their former proceedings, and amend their records, so far as might be necessary to render the same valid and effectual in law; 3d. To see if the cor-poration would mortgage their real estate, and give such other security as might be necessary, to enable them to pro-cure a loan of $3500, and to do all other acts and things necessary to obtain the same.

This application was dated the 6th of August, 1840, and on the same day the justice issued his warrant, directed to Daniel G. Holmes, one of the proprietors, to call a meeting of the same at the time and place and for the purposes men-tioned in the application ; which being held at the time and place specified, namely, on the 20th of August, 1840, (the justice presiding until a clerk was chosen and qualified) the

corporation was regularly organized, and votes were passed confirming all the previous records and proceedings, and authorizing Nathaniel Thurston, their agent and treasurer, to procure the loan above mentioned from the Lowell Institution for Savings, and to execute the mortgage and note aforesaid therefor.

To this evidence the demandant objected on various grounds, and among others, that there was no legal or competent evidence, that the persons, who applied to the justice to issue his warrant, were members of the corporation; that the proprietors had no legal authority to divide their meeting-house into shares, or issue certificates of stock thereon; that holders of such shares did not thereby become members of the corporation; that the justice had no authority to call such meeting, and no meeting could legally be held under his warrant; and that there was no evidence that the exigency existed authorizing the justice to issue his warrant.

The six signers of the application for the meeting of the 20th of August, 1840, were Nathaniel Thurston, Ira Caverly, Cummings Paris, Daniel G. Holmes, Joseph W. Thurston, and Henry C. Magoun; the first three of whom, it was conceded, were qualified voters.

Daniel G. Holmes, in August, 1836, was appointed one of the committee to purchase land; in August, 1837, he was chosen secretary of the society; his name was on the stock book; and in February, 1838, a certificate of one fourth of a share appeared to have been issued to him. But whether he was the owner of any other fractional parts of a share did not appear from the books, although there were such fractional parts.

Joseph W. Thurston was a member of the firm of Thurston, Latham and company, who were original subscribers, in that form, for one share of the stock. Thurston, having acquired the rights of his copartners, became the proprietor of this share in 1839.

Henry C. Magoun appeared to have been a signer of the original stock book, and to have paid for a share, although no certificate was to be found of it. He had also acted as a proprietor.

All these persons, except Paris, and ten or fifteen other members, were present at the meeting, and took a part in the proceedings as members, on the 20th of August, 1840.

*S. Bartlett* and *P. W. Chandler*, for the defendant, cited *Grays* v. *Turnpike Company*, 4 Rand. 572, 582; *Wood* v. *Cushing*, 6 Met. 448.

*T. Hopkinson* and *B. F. Butler*, for the plaintiff, contended that mere ownership of stock could not make one a member of a religious society, but that his consent in writing must be shown; Rev. Sts. *c.* 20, § 4; and that the exigency required by Rev. Sts. *c.* 20, § 17, for calling a meeting by a justice of the peace, must not only exist, but must appear on the face of the application and of the warrant. *Sudbury* v. *Stearns,* 21 Pick. 148; *Bridge* v. *Ford*, 4 Mass. 641.

DEWEY, J. The original organization of "the Freewill Baptist Church in Lowell" must, as between these parties, be held to have duly taken place, so far as the acceptance of the charter, and the actual creation of a body politic, are concerned. Both parties have so treated the association, and upon the facts properly so treated it. The nature of this corporation, and its distinctive character, are also well settled. Notwithstanding the various acts of the association, which were of a character unusual for a merely religious society, yet, upon a full consideration of the subject, this court decided in the case of *Wiggin* v. *Freewill Baptist Church in Lowell*, 8 Met. 301, that it was a religious society, under a charter conferring no other privileges, but subject to the statutes regulating religious societies.

In this aspect of the case, the only question seems to be, whether the meeting of the society held on the 20th of August, 1840, was a legal meeting. This society had conducted their affairs without any by-laws directing the manner of calling meetings; nor do they appear to have had any assessors or standing committee competent to call meetings. They were therefore within the cases provided for by the Rev. Sts. *c.* 20, § 17, and §§ 26, 27.

The defendants contend, that a proper and legal application was made by five or more of the qualified voters of

the society to a justice of the peace, requesting him to call a meeting of the society on the 20th of August, 1840. Of the signers of this application, three at least are conceded to have been qualified voters of the society, namely, Nathaniel Thurston, Ira Caverly, and Cummings Paris. These were shareholders, and members of the corporation, if there were any members.

The fourth signer is Daniel G. Holmes, whose name appears on the stock book of the society. In August, 1836, he was appointed one of the committee to purchase land. In August, 1837, he was chosen secretary of the society; and a certificate of one fourth of a share appears on the books to have been issued to him in February, 1838; but whether he was the owner of other fractional parts of a share does not appear from the books; although it does appear that there were fractional shares.

Joseph W. Thurston, the fifth signer, became interested in this society as a member, by an original subscription in the name of " Thurston, Latham and company," and by eventually succeeding to the rights of his copartners. Whether the original copartners would all of them have become members of the society, and what their rights as voters would have been, had they all claimed severally to exercise that right, we need not now inquire, Thurston, as early as 1839, having become sole owner of the share; and ownership of shares in this property seems to have been the mode of becoming members of the society, as it is in many similar societies in our large towns and cities.

Henry C. Magoun, the sixth signer, was shown by the evidence to have been a signer on the original stock book. He appears from the evidence to have acted as one of the proprietors at meetings held before August, 1840, and also to have paid for a share, although no certificate is now to be found of it.

As corroborative evidence, we have the testimony of a witness, that all these persons, except Paris, were present at the meeting on the 20th of August, 1840, as such members.

We think that this evidence would well authorize a jury to

find, that the application for this meeting was signed oy five of the qualified voters of the society, and that in this respect the meeting was regularly called.

The other material facts, the want of assessors and parish committee, are also fully shown to have existed. This justified the calling of a meeting under the provisions of the Rev. Sts. *c.* 20, § 17, before cited; and we see no valid objection to the warrant in the form in which it was issued.

The result is, therefore, that this meeting was legally called; it was attended by more than ten members, thus showing that there were ten or more qualified voters or persons answering to that description present, and allowed by those who were regular members to be treated as legal members; and at this meeting authority was given to execute the convey ance, under which the tenants claim.

*Judgment for the tenants.*